SAVOY, Judge.
Plaintiff brought suit on defendant’s check dated June 14, 1965, in the sum of $697.19, on which defendant had stopped payment.
Defendant answered the petition, alleging failure of consideration, and reconvening for damages of $250.00. The matter was tried on its merits in the lower court, and judgment was rendered for defendant on the main demand, dismissing plaintiff’s suit and disallowing defendant’s reconventional demand. From this judgment plaintiff has appealed to this Court.
Briefly, the dispute between the parties and their contentions are as follows.
In May of 1965, defendant, through his son, James Laperouse, a building contractor, approached plaintiff with regard to defendant’s purchase of kitchen cabinets for a house then being built at St. Martin-ville, Louisiana, for defendant by his son James. On or about June 9, 1965, James Laperouse made a selection of cabinets and placed an order for them. On June 14, 1965, the plaintiff delivered all but four of the cabinets, and defendant gave plaintiff’s delivering driver the check sued upon. On or about June 15, 1965, defendant stopped payment on the check.
There was to be a delay in the delivery of the four cabinets that were not delivered on June 14th, inasmuch as they had to be ordered from the manufacturer in North Carolina. Defendant contends he had not understood this to be the case, and expected full delivery at one and the same time; that his home was ready for completion and consequently time was of the essence with regard to availability of the cabinets; and that he was therefore justified in stopping payment on the check and refusing to purchase the cabinets. Plaintiff contends to the contrary; also, that defendant stopped payment on the *926 check for some motive other than the delay; that plaintiff’s acts were reasonable under the circumstances; and that accordingly defendant should be held bound under the contract.
As might be expected, the evidence is conflicting. Plaintiff’s representative, a Mr. Bell, claims he informed James Lape-xouse. that the four cabinets were probably not in stock in plaintiff’s Lafayette warehouse, but they might be in stock in Ruston, Louisiana, and if so could be promptly obtained. James Lape-xouse, however, claims that Bell informed bim they definitely would be in stock in Ruston if not in Lafayette.
At any rate, when the June 14th delivery was made, the cabinets then delivered were packed in cartons with their stock numbers •appended. However, the layout sketch for the cabinets, which had been previously prepared by Bell, was inadvertently left behind at plaintiff’s place of business.. Such a sketch is necessary for the proper placement of cabinets and it is customary in the trade for a sketch to be delivered along with them.
James Laperouse telephoned plaintiff’s place of business in Lafayette, Louisiana, on the same day, June 14th, inquired about the sketch, and was told that it would be mailed to him.
In mailing the sketch, plaintiff attached a memo to the effect that four cabinets •had to be ordered from the factory in North Carolina, and that it would be about seven weeks before they could be shipped from there.
Defendant claims that was the first knowledge he had that all of the cabinets had not been delivered on June 14th; that he could not wait that long; and that he consequently placed a stop-payment order on the check.
Defendant’s check did not include the cost of the four undelivered cabinets, but without the layout sketch to compare with the stock numbers oh the packing cartons, that fact was not apparent.
Furthermore, James Laperouse, the contractor, was not present at the time of delivery.
The memo regarding the seven week delay was dated June 15th. Records of defendant’s bank indicate that the stop-payment order was made on June 15th. Plaintiff contends the memo could not have reached defendant before June 16th, at the earliest, and consequently, the stop-payment order had no actual connection with the memo. Defendant denies this and steadfastly maintains he received the memo the same day his stop-payment order was made. Furthermore, the envelope in which the memo was mailed, which would show a postmark, is not in evidence. Despite the June 15th date on the memo, there is nothing to show that the memo was not actually mailed on June 14th, when James Laperouse called to inquire about the layout sketch. The records show that when that call was made, he received an apology and was told the sketch would be promptly forwarded in the mail. Since the cabinets could hardly have been installed without the sketch, it would, in fact, have behooved plaintiff to mail it out the same day. In any event, the evidence simply does not disclose any other reason for the stop-payment order. The evidence does disclose that defendant wanted the cabinets and was specifically interested in ready-made cabinets so that they could be quickly installed. The preponderance of the evidence shows that the stop-payment order was made in response to the memo.
The trial judge heard and saw the witnesses. The version of disputed and conflicting facts accepted by the trier of fact should likewise be accepted in this Court unless clearly erroneous. It was the conclusion of the trial judge in the instant case that defendant expected full delivery in one shipment; that time *927 was of the essence to defendant; that the memo pertaining to the seven week delay was not contemplated by defendant, nor for that matter by plaintiff; that there had been no meeting of the minds between the parties as a result; that a binding contract, therefore, ceased to exist upon defendant’s receipt of the memo. We find no manifest error therein.
It is our view that the equities here involved are governed by the provisions of the following articles of the Louisiana Civil Code:
“Art. 1766. No contract is complete without the consent of both parties. In reciprocal contracts it must be expressed. In some unilateral contracts the law provides that under certain circumstances it shall be presumed.”
“Art. 2474. The seller is bound to explain himself clearly respecting the extent of his obligations: any obscure or ambiguous clause is construed against him.”
“Art. 2485. If the seller fails to make the delivery at the time agreed on between the parties, the buyer will be at liberty to demand, either a canceling of the sale, or to be put into possession, if the delay is occasioned only by the deed of the seller.”
On June 16th, there was a telephone conversation between James Laperouse and Mr. Hewitt Bordelon, one of the co-owners of Lafayette Woodworks. The gist of the conversation was to the effect that Mr. Bordelon would call the factory in North Carolina to see if some improvement could be made in the seven week delay. Mr. Bordelon testified he was informed by the factory that the four cabinets could be shipped from there two or three days later. Allowing eight to ten days in transit to Louisiana, this would then have reduced the delay to approximately two weeks, or possibly a little less. Mr. Bordelon stated further that he so informed James Laperouse, but that is denied by Laperouse. In any event, the formation of any supplemental agreement between the parties amending or enlarging upon the initial agreement would have to be clearly shown to support a new contract, and such simply has not been shown.
With regard to defendant’s recon-ventional demand for damages allegedly incurred as a result of defendant’s having to build his own cabinets, sufficient proof of the demand has not been made, and it is apparent from defendant’s brief that he acquiesces therein and is not pursuing the claim on this appeal.
Accordingly, for the reasons assigned, the judgment of the lower court is affirmed.
Costs of this appeal are assessed against plaintiff-appellant.
Affirmed.